# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-15-110-D |
| ) | |
| ANDRE KENYON BATTLE, JR. and ) | |
| CESAR BAEZ, ) | |
| ) | |
| Defendants. ) | |

# **O R D E R**

Before the Court is Defendants' Joint Motion to Suppress Evidence and Statements [Doc. No. 29]. The government timely responded to the Motion and, on July 28, 2015, the Court conducted an evidentiary hearing.

## I.    Introduction

Defendants, Andre Kenyon Battle, Jr. and Cesar Baez, are charged in a one-count Indictment with possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Police officers employed by the Elk City Police Department developed probable cause that Defendants, passengers on a bus, were in possession of marijuana. One of the officers searched a backpack belonging to Defendant Battle. The officer discovered several packages of a white crystal substance that appeared to be methamphetamine. As a result, the officer placed Defendants under arrest for possession of methamphetamine. After their arrest, a citizen notified law enforcement that a second backpack found on the bus, identical in appearance and believed to belong to Defendants, contained an additional quantity of drugs. Law enforcement obtained the second backpack and confirmed that the backpack also contained several packages of

methamphetamine. After their arrest, Defendants made incriminating statements to law enforcement.

Defendants move to suppress both the evidence seized by law enforcement officials as well as their incriminating statements obtained after their arrest on the following grounds: (1) the warrantless arrest was not supported by probable cause; (2) the arrest was unlawful under the laws of the State of Oklahoma; (3) the warrantless search of both backpacks was unlawful; and (4) the post-arrest statements should be suppressed as "fruit of the poisonous tree."

## II. Evidence and Testimony at the Suppression Hearing

The Government presented two witnesses at the suppression hearing, Officer Jeffrey Miller and Officer Matthew Worst. Both officers were employed by the Elk City Police Department on May 4, 2015, the date of the Defendants' arrest. During their testimony, the officers explained the circumstances giving rise to Defendants' arrest and the role they played in relation thereto.

On the date in question, a Greyhound bus driver called police with a complaint that he detected a strong odor of marijuana on the bus. Police were dispatched to meet the bus at a convenience store in Elk City. The bus was already stopped at the convenience store as part of a scheduled rest stop and not due to police intervention. In fact, several passengers had already exited the bus before police appeared on the scene. Officer Worst arrived at the convenience store first. He directed the passengers still remaining on the bus to exit. No testimony was given as to what point in time Defendants existed the bus. Thus, it is unknown whether Defendants exited the bus before or after Officer Worst arrived.

By the time Officer Miller arrived, no passengers remained on the bus.[1] Both officers testified that they smelled marijuana on the bus and that the smell was strongest in the first four or five rows of the bus. They conducted a search of the bus that lasted approximately 5-10 minutes. They searched the bus itself, along with bags, suitcases, purses and other personal effects that the passengers had left on the bus. They confined the search to the first four or five rows. The officers did not recover any contraband during the search. They exited the bus and told the driver the passengers could reboard.

The officers then moved their patrol cars closer to the convenience store entrance and went inside. They radioed their dispatcher that they were again available to respond to other calls. Officer Miller went to the cooler to select a drink. Officer Worst went to the restroom. As Officer Worst approached the restroom, he saw two men leaving from it in a hurry. He vaguely remembered seeing them in the crowd of bus passengers that had exited the bus and assembled in the parking lot of the convenience store. He noticed one of the men was carrying a backpack. Officer Miller similarly testified that while he was buying a drink he observed two men leave the restroom in a hurry.

When Officer Worst got to the door of the restroom, an individual (later identified as Leonard Lambert), told him that the two men had thrown something away "there," and pointed towards a trash can located next to the sink. Officer Worst looked in the trash can and saw a clear bag containing a green, leafy substance. Based on his training, Officer Worst recognized the substance to be marijuana. He picked up the bag, ran outside the bathroom and alerted Officer Miller to stop the bus. At that time, Officer Miller was at the checkout counter and was closest to

---

[1] The record reflects one woman and her small child were permitted to remain on the bus. This fact is not significant to the issues presented.

the entrance of the convenience store. Both officers ran outside and waved their hands to stop the bus. The bus had just started to depart but was still in front of the convenience store.

The bus driver stopped the bus. Officer Miller went on board and located Defendants at the back of the bus. He then directed Defendants to exit the bus. He asked Defendants if the backpack belonged to them and they said yes. Officer Miller took possession of the backpack. He asked Defendants if they had any other property on the bus and they both said that they did not.

Officer Miller testified that Defendants had no choice but to get off the bus. He told Defendants they were being detained for throwing what appeared to be marijuana in the trash can inside the convenience store restroom. Officer Miller directed Defendants to sit down near the first two gas pumps at the convenience store. At that time, the bus departed from the convenience store.

Within a few minutes, Officer Miller searched the backpack. He discovered some clothing items including a coat. The lining of the coat had been partially cut out. When Officer Miller picked up the coat he noticed it was heavy. He searched the coat and discovered two packages weighing approximately one pound each of a white crystal substance that appeared to be methamphetamine. Officer Miller also discovered additional packages of methamphetamine in the backpack. At that time, Officer Miller testified that he arrested Defendants for possession of methamphetamine.

Later, police received a call from the husband of a passenger on the bus. He advised police that his wife had discovered a second backpack , identical to the one Defendant Battle carried on the bus. She opened the backpack and observed what appeared to be drugs in the backpack. She then asked her husband to contact the police. The backpack was retrieved from the bus by the Oklahoma

4

Highway Patrol and later inventoried. No evidence was adduced that the backpack was opened in response to a request by law enforcement.

Defendants called as their sole witness at the suppression hearing Special Agent Dee Blevins with the Federal Drug Enforcement Administration. On May 13, 2015, Agent Blevins interviewed Mr. Lambert by telephone. Agent Blevins completed a report regarding the telephonic interview. According to his report, Mr. Lambert told Agent Blevins that Defendants threw away something in the trash can located inside one of the bathroom stalls. Both of the Defendants were inside the same stall and Mr. Lambert thought that was strange. On cross-examination, Agent Blevins testified that at the time he interviewed Mr. Lambert he was not aware that there was a trash can located next to the bathroom sinks and that he may not have properly understood where the trash can was located.

### III. Discussion

#### A. Probable Cause Existed to Support Defendants' Arrest

The parties dispute whether Defendants were detained pursuant to a *Terry* stop or whether they were arrested. In disputing this issue, the parties focus on the point in time after the bus had re-loaded. Defendants claim that when Officer Miller escorted Defendants off the bus, they were arrested at that time without probable cause. The government contends that Defendants were subject to an investigative detention at the time they were escorted off the bus and the officers needed only a reasonable suspicion to support the detention. But the government further contends that probable cause nonetheless existed on grounds Defendants had committed the crime of possession of marijuana. The government claims, therefore, that any warrantless arrest was lawful.

An investigative detention, or *Terry* stop, "is an encounter in which police may 'stop and briefly detain a person for investigative purposes.'" *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir.

2012) (*quoting United States v. Sokolow*, 490 U.S. 1, 7 (1989)). While a *Terry* stop is a Fourth Amendment seizure, it does not require probable cause. *Id*. Instead, a *Terry* stop is justified "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Id*. (citations and internal quotations omitted). An arrest constitutes a Fourth Amendment seizure and is characterized by the intrusive or lengthy nature of the detention. *Id*. An arrest must be supported by probable cause. *Id*. A detention ceases to be a *Terry* stop and becomes an arrest if it continues for an excessive time or closely resembles a traditional arrest. *Hiibel v. Sixth Judicial Dist. Ct. of Nev*., 542 U.S. 177, 186 (2004).

Although the parties do not give much focus to the initial search of the bus, the Court finds the analysis should begin there. Recently, in *United States v. Paetsch*, 782 F.3d 1162 (10th Cir. 2015), the Tenth Circuit had occasion to address the Fourth Amendment contours of group seizures. The Court finds the search of the bus is analogous to a group seizure and the decision in *Paetsch* instructive.

In *Paetsch*, at issue was a general barricade seizure of approximately 20 vehicles. The barricade was established as part of an effort to stop a vehicle containing a tracker secreted in money stolen minutes earlier during a bank robbery. Twenty-nine minutes into the stop, police removed the defendant from his car after observing his suspicious behavior. About one hour later, police looked through the defendant's car window and observed a money band used to wrap currency. The tracker's signal was isolated and determined to be coming from the defendant's car. The defendant moved to suppress the physical evidence seized from his car on grounds the police lacked individualized suspicion that any particular person subject to the barricade had committed a crime.

At the outset, the Tenth Circuit noted that "[g]enerally, a seizure made without individualized

6

suspicion of wrongdoing is unreasonable." *Paetsch*, 782 F.3d at 1168-69. At the time the barricade was established, the police lacked individualized reasonable suspicion. *Id*. at 1169. Similarly here, at the time the bus was initially searched, the police lacked reasonable, articulable suspicion of any particular person.

The Tenth Circuit determined, however, that "the touchstone of the Fourth Amendment is reasonableness, not individualized suspicion." *Id*. (citation omitted). Whether a group seizure is reasonable requires a balancing of the public interest justifying the seizure against the intrusion on individual liberty. *Id*. at 1170. Factors governing that analysis include (1) the gravity of the public concern; (2) the degree to which the seizure advanced the public interest; and (3) the severity of the interference with individual liberty. *Id*.

In *Paetsch*, the Court determined that a fleeing bank robber posed a substantial public threat; the barricade's outcome (*i.e.*, apprehending the defendant) proved its effectiveness thereby advancing the public interest; and that the intrusions on individual liberty did not tip the scale in the defendant's favor. *Id*. at 1170-73. As to the latter finding, the court stated that "once individualized suspicion develops, a defendant may complain about the underlying checkpoint or barricade only for what happened up to that time." *Id*. at 1174. Accordingly, the court analyzed only those liberty intrusions that occurred before individualized suspicion developed. *Id*.

Here, Defendants raise no issues about the group seizure. Even if they had, the Court finds the group seizure was reasonable. Although a person using marijuana may not pose the same level of public concern as a fleeing bank robber, illegal drug use on a mode of public transportation is of sufficient importance to justify the reasonableness of the seizure. The initial search did not uncover any illegal activity. *See Paetsch*, 782 F.3d at 1171 (discussing the second factor in terms of "what

7

percentage of the total seizures uncovered wrongdoing"). However, Defendants were ultimately placed in custody for illegal possession of drugs. This factor, therefore supports the reasonableness of the search. But perhaps most significant is the very minimal degree to which the search of the bus by Officers Miller and Worst interfered with the passengers' individual liberty. The bus was already stopped at the convenience store for a rest stop and many of the passengers – possibly even Defendants – had already stepped off before the officers arrived. In addition, the search was conducted in a matter of a very few minutes and the bus driver was immediately told thereafter that the passengers could reboard.

Once the events transpired inside the convenience store, reasonable individualized suspicion clearly developed. The Court therefore proceeds to analyze Defendants' seizure on an individual basis. *Paetsch*, 782 F.3d at 1175.

Officer Miller testified that when he escorted Defendants off the bus, he did so as part of an investigative detention, not an arrest. As stated, Defendants contend that they were arrested at the time they were escorted off the bus. In certain circumstances, if probable cause to arrest exists, the court need not determine whether an investigative detention amounts to an arrest. *United States v. Chavez*, 660 F.3d 1215, 1223 (10th Cir. 2011).

"'Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Chavez*, 660 F.3d at 1224 (*quoting United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir.2004)). "'Probable cause is measured against an objective standard of reasonableness and may rest on the collective knowledge of all officers involved in an investigation rather than solely on the knowledge

8

of the officer who made the arrest.'" *Id*. (*quoting United States v. Zamudio–Carrillo*, 499 F.3d 1206, 1209 (10th Cir.2007)). The court must evaluate the circumstances based on how they would have appeared to "prudent, cautious and trained police officers." *Id*. (citation omitted).

Here, Officer Worst was told by Mr. Lambert that Defendants had thrown something into the trash can in the convenience store restroom. Officer Worst searched the trash can and found a bag containing a substance that, based on his training, appeared to be marijuana.[2] The officers had previously detected a strong odor of marijuana on the bus. Both officers observed Defendants walking hurriedly from the bathroom and Officer Worst vaguely remembered associating the Defendants with passengers on the bus. Officer Worst also noticed that Defendant Battle was carrying a backpack.

Officer Worst testified that he grabbed the bag of marijuana, ran from the bathroom and told Officer Miller about the matter. Officer Miller similarly testified that as he was purchasing a drink at the convenience store counter, Officer Worst came running from the bathroom holding the bag of suspected marijuana and alerting Officer Miller to stop the bus. Using the collective knowledge of the officers, and viewing the circumstances as they would have appeared to prudent, cautious and

---

[2]The Court is not persuaded that the testimony of Agent Blevins, which Defendants contend suggests that Officer Worst searched the wrong trash can, requires a different result. As Agent Blevins testified, he was conducting a telephonic interview of the witness, Mr. Lambert, several days after the incident and he was not familiar with the layout of the convenience store restroom at that time. The confusion about the trash can appears to be attributable to these factors. Regardless, given the near contemporaneous timing of Mr. Lambert telling Officer Worst that Defendants had thrown something "there," pointing apparently to the trash can that Officer Worst searched, and Officer Worst recovering marijuana from that trash can, the circumstances support a finding that Officer Worst acted on a reasonable understanding of the facts. *See, e.g., Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009) ("an officer's reasonable but mistaken understanding of the facts justifying a search or seizure does not negate the legitimacy of a probable cause determination").

9

trained police officers, probable cause existed to believe that Defendants were engaged in criminal activity – *i.e.*, possession of marijuana.

**B.　The Fourth Amendment Does Not Prohibit Warrantless Misdemeanor Arrests**

Relying on Oklahoma law, Defendants contend their warrantless arrest was unlawful because the offense of possession of marijuana is a misdemeanor offense and a warrantless arrest is permitted only if the offense is committed in the presence of the officer.[3] The government responds that the offense was, in fact, committed in the presence of an officer but regardless, the Fourth Amendment does not require a warrant for lesser offenses occurring outside the presence of the officer.

Without deciding the factual nuances of whether the offense was committed in the presence of Officers Worst and/or Miller, the government is correct that the Fourth Amendment is not implicated. As the Oklahoma Court of Criminal Appeals has recognized, "the necessity of a warrant to make a misdemeanor arrest for a crime not committed in the presence of an officer is a requirement imposed by statute, and not the federal Constitution." *State v. Lee*, 763 P.2d 385, 386 (Okla. Crim. App. 1988).

Indeed, a state is free to impose greater restrictions on arrests thereby granting additional protections to its citizens, but those additional protections do not create an additional federal right under the Fourth Amendment. *Street v. Surdyka*, 492 F.2d 368, 372 (4th Cir. 1974); *see also Welsh v. Wisconsin*, 466 U.S. 740, 756 (1984) (White, J. dissenting) ("[T]he requirement that a misdemeanor must have been committed in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment."); *United States v. Laville*, 480 F.3d 187, 192 (3d Cir.

---

[3]*See* Okla. Stat. tit. 22, § 196 ((governing warrantless arrests); Okla. Stat. tit. 63, § 2-402(B)(2) (governing charge of possession of marijuana).

2007) ("the validity of an arrest under state law must never be confused or conflated with the Fourth Amendment concept of reasonableness"); *United States v. Mikulski*, 317 F.3d 1228, 1232 (10th Cir. 2003) ("The officers' violation of state law is not, without more, necessarily a federal constitutional violation."); *United States v. Green*, 178 F.3d 1099, (10th Cir. 1999) ("[T]he fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended.") (citation omitted); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (defendant's right "to be arrested only when the misdemeanor is committed in the presence of the arresting officer, [is] not grounded in the federal Constitution").

Based on the foregoing, even if the misdemeanor offense of possession of marijuana did not occur in the presence of an officer, no Fourth Amendment right is implicated. As set forth, probable cause supported the Defendants' arrest and therefore, the arrest was lawful.

    **C.**    **The Search of the Backpacks Was Lawful**

        **1.**    **The Search of Defendant Battle's Backpack was Permissible as a Search Incident to a Lawful Arrest**

It is undisputed in this case that Defendants did not consent to the search of the backpack. It is also undisputed that Officer Miller asked Defendants if the backpack belonged to them and then carried the backpack off the bus. Defendants contend the search was unlawful and none of the limited circumstances justifying a warrantless search exist. The government contends the search was incident to a lawful arrest and, therefore, constitutionally permitted.

A search incident to a lawful arrest is one of the enumerated exceptions to the Fourth Amendment's warrant requirement. *United States v. Rollins,* 190 Fed. Appx. 739, 743 (10th Cir. 2006) (*citing Chimel v. California*, 395 U.S. 752, 762-63 (1969)). The Court has determined that at the time Defendants were escorted off the bus, probable cause existed to support an arrest on

charges of possession of marijuana. Although Officer Miller testified that Defendants were being detained at that time and were not arrested until after the search, "the time at which an officer forms the intent to arrest is not determinative." *United States v. Torres-Castro*, 470 F.3d 992, 998 (10th Cir. 2006). Instead, the court must ask only "(1) whether a legitimate basis for the arrest existed before the search, and (2) whether the arrest followed shortly thereafter." *Id.* (citation omitted). Thus, "a search incident to arrest can also precede the arrest if probable cause for the arrest preceded the search (rather than being justified by the fruits of the search)." *United States v. Sanchez*, 555 F.3d 910, 920 (10th Cir. 2009) (*citing Rawlings v. Kentucky*, 448 U.S. 98 (1980)). Morever for "search-incident-to-arrest purposes" the court may "deem the arrest to have occurred before the formal announcement to a suspect that he is under arrest." *Id* at 921. In addition, it is irrelevant that a defendant is arrested for a crime different from the crime for which the defendant is ultimately charged. *Id.* at 922. ("'[T]he legitimate basis for an arrest is purely an objective standard and can be for *any crime*, not merely that for which the defendant is charged.'" (emphasis added) (*quoting Torres-Castro*, 470 F.3d at 998).

Here, probable cause existed to arrest Defendants prior to the search. The search of the backpack took place within a matter of a few minutes of Defendants being escorted off the bus. The fact that Defendants were charged with possession of methamphetamine is irrelevant as probable cause existed for the crime of possession of marijuana.

A search incident to arrest allows a search not only of the arrestee, but also of the area within his "immediate control," meaning "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel*, 395 U.S. at 763. When Officer Miller searched the backpack, Defendants were seated on the ground next to the gas pumps. Officer Miller stood next to them

along with Officer Worst. Defendants were not handcuffed. Under these circumstances, the backpack remained within the area of Defendants' immediate control at the time of the search. *Compare United States v. Herrera*, 810 F.2d 989, 990-91 (10th Cir. 1987) (search of briefcase in defendant's possession after his arrest was lawful as search incident to arrest); *United States v. Hood*, No. 1:12CV00033 DS, 2012 WL 2522567 at *3 (D. Utah June 28, 2012) (unpublished op.) (upholding search of backpack that officer grabbed from defendant as he was taken into custody as lawful search incident to arrest) *aff'd United States v. Hood*, 501 Fed. Appx. 812 (10th Cir. 2012).[4]

### 2. The Search of the Second Backpack By a Private Citizen is Valid

The evidence at the hearing established that the search of the second backpack was conducted entirely by a private citizen. No evidence was adduced that the backpack was opened in response to a request by law enforcement.

Fourth Amendment protection against unreasonable searches and seizures "is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (*quoting Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)). Instead, to trigger Fourth Amendment protections, "[i]n some affirmative way, the police must instigate, orchestrate, encourage or exceed the scope of the private search." *United States v. Smythe*, 84 F.3d 1240, 1243 (10th Cir. 1996). The

---

[4]As in *Hood*, here, the search is also valid under the inevitable-discovery doctrine. *See Hood*, 2012 WL 2522567 at *3 ("Even assuming, arguendo, that officers did not conduct a valid search of Mr. Hood's backpack incident to his arrest, it seems likely that the contents of the backpack inevitably would have been discovered when the backpack was inventoried at the police station.") *aff'd*, 501 Fed. Appx. at 813 ("the search of the backpack was consistent with the Fourth Amendment's search-incident-to-arrest and inevitable-discovery doctrines and any motion to suppress arguing otherwise would have failed").

test governing whether a search by a private person becomes government action involves a two-part inquiry: (1) "whether the government knew of and acquiesced in the intrusive conduct;" and (2) "whether the party performing the search intended to assist law enforcement efforts or to further his or her own ends." *United States v. Leffall*, 82 F.3d 343, 347 (10th Cir. 1996).

As stated, the search of the second backpack that was left on the bus was conducted by a private citizen. Law enforcement did not direct, encourage or otherwise instigate the search. Indeed they did not know about the backpack until after receiving a call from the husband of the bus passenger who found it. At that time she had already opened and searched the backpack. The first part of the test, therefore, clearly supports a finding that the search was conducted by a private citizen.

As to the second factor, there is no evidence in the record that the bus passenger intended to assist law enforcement. In *Leffall*, the Tenth Circuit discussed its prior holding in *United States v. Andrews*, 618 F.2d 646 (10th Cir. 1980) observing that in that case: "the airline employee's action was 'prompted solely by his desire to assist law enforcement,' *id*. (quoting district court finding), but we held that the search was private when the airline employee opened the package before notifying police, who then field tested the white powder and found it to contain cocaine." *Leffall*, 82 F.3d at 348. Thus, even assuming the bus passenger desired to assist law enforcement, the facts of this case are analogous to those discussed in *Lefall* and the Court concludes that the search of the second backpack by a private citizen did not trigger Fourth Amendment protections.

### D. Defendants' Post-Arrest Statements are Admissible

Defendants move to suppress "any evidence gathered as a result of the unlawful seizure" including "all statements obtained." *See* Joint Motion at p. 11. Defendants contend such evidence

14

and statements are improper "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 485-88 (1963). Because the Court has found lawful both the arrest of Defendants and the search of the backpacks, no grounds exist upon which to suppress Defendants' post-arrest statements.

**IV.    Conclusion**

Having fully considered the parties' briefs, the evidence at the hearing and the applicable law, the Court concludes the government has satisfied its burden of proving that probable cause supported the Defendants' arrest, that the arrest did not violate the Fourth Amendment, and that the search of both backpacks was constitutionally permitted.

IT IS THEREFORE ORDERED that Defendant's Joint Motion to Suppress Evidence and Statements [Doc. No. 29] is DENIED.

IT IS SO ORDERED this  31st  day of July, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE